UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK     X



CV   13   6998

DAVID J. WHELAN  and MARY M. WHELAN,

Plaintiffs

\# 13-CV-

BIANCO, J.

- against -

FILED TOMLINSON, M
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

JUDITH A. PASCALE, individually and in her ★   DEC 09 2013   ★

official capacity as Clerk of the County of Suffolk,

New York,  COUNTY OF SUFFOLK,    LONG ISLAND OFFICE

DAVID JANNETTI and DOES 1-5,

Defendants.

_____X

## COMPLAINT

Plaintiffs DAVID J. WHELAN and MARY M. WHELAN (herein "WHELAN"),

pursuant to the Federal Rules of Civil Procedure and otherwise, hereby file this Complaint

against JUDITH A. PASCALE (herein "PASCALE") individually and in her official

capacity as Clerk of the County of Suffolk, New York, COUNTY OF SUFFOLK (herein

"COUNTY"), DAVID JANNETTI  (herein "JANNETTI") and DOES 1-5,  and state as

follows:

### PRELIMINARY STATEMENT

Plaintiffs seek damages and injunctive and declaratory relief against Defendants

who filed and/or recorded, and/or caused to be filed and recorded,  3 "notice of pendency"

documents (i.e., lis pendens documents) against Plaintiffs and their residential waterfront

property  in the Village of North Haven, New York, beginning on December 9, 2010.

1

Plaintiffs allege that Defendants' conduct violates their constitutional rights under State law as well as the United States Constitution (Amend. I, IV, V, XIV), including, *inter alia*, the Due Process, Equal Protection and Free Speech Clauses) by their individual and conjoined conduct that unlawfully interfered with Plaintiff's reputational, liberty and property interests by "immediately" recording of successive multiple notices of pendency (lis pendens) documents in Suffolk County's real property records without notice and a prompt hearing, although JANNETTI never provided PASCALE, nor Plaintiffs, with any documentary evidence, in admissible form, consistent with JANNETTI's legal burden of proof to demonstrate that JANNETTI personally held in his possession all of the monies required to support JANNETTI's complaint seeking entitlement to a "judgment" that "would affect title to, or the possession, use or enjoyment of" Plaintiffs' residence.

## SUMMARY OF CONTENTS

PARTIES, JURISDICTION AND VENUE .......................................................... 3

ALLEGATIONS COMMON TO ALL COUNTS...................................... 5

COUNT I: VIOLATION OF PLAINTIFFS' (AS WELL AS OTHERS') FIFTH
AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS
AND EQUAL PROTECTION UNDER 42 U.S.C. §1983 et seq. ........... 15

COUNT II: VIOLATION OF PLAINTIFFS' (AND OTHERS') FIRST
AND FOURTEENTH AMENDMENT RIGHTS TO FREE SPEECH
AND EQUAL PROTECTION UNDER 42 U.S.C. § 1983 et seq. ......... 20

COUNT III: VIOLATION OF PLAINTIFFS' (AND OTHERS') FIRST,
FOURTH AND FOURTEENTH AMENDMENT RIGHTS TO
LIBERTY INTERESTS AND REPUTATIONAL INTERESTS
UNDER 42 U.S.C. § 1983 et seq. .............................................. 23

COUNT IV: VIOLATION OF NEW YORK'S CPLR ARTICLE 65 AND
A DEMAND THAT CERTAIN PORTIONS THEREOF BE
DECLARED UNCONSTITUTIONAL ………………………………. 26

DEMAND FOR JURY TRIAL........................................................................ 27

RELIEF REQUESTED.................................................................................. 27

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs DAVID J. WHELAN and MARY M. WHELAN (herein "WHELAN") jointly own a residential property with a long dock on the waterfront in the Village of North Haven, at 12 East Harbor Drive, which is located in the Town of Southampton, County of Suffolk and State of New York (herein "the property").

2. Defendant JUDITH A. PASCALE (herein "PASCALE") is being sued individually and in her official capacity as the elected Clerk of the County of Suffolk, New York. As the County Clerk, PASCALE's administrative duties include the recordation of notices of pendency (lis pendens) which affect the status of real property located within the geographical area of Suffolk County.

3. Defendant COUNTY OF SUFFOLK (herein "COUNTY") is a governmental subdivision of the State of New York, which has financial resources to allocate and spend through a budget developed through the COUNTY's legislative process.

4. Defendant DAVID JANNETTI (herein "JANNETTI") resides in the County of Suffolk, State of New York.

5. DOES 1-5 are intended to be such other persons who assisted, and/or effectuated, the plans and schemes of one or both of the foregoing named Defendants, or will do so by virtue of their official positions and/or offices.

6. Jurisdiction of this Court is based upon Plaintiffs' federal claims under 42

U.S.C. §1983, the civil rights law, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (As amended Pub. L. 104-317, title III, Section 309(3) Oct. 19, 1996, 110 Stat. 3853.)

7. Federal Courts have jurisdiction in matters where state actors deprive a plaintiff

of a federal right and that deprivation resulted from "the exercise of some right or

privilege created by the State or by a rule of conduct imposed by the state or by a person

for whom the state is responsible" and "the party charged with the deprivation [is] a

person who may fairly be said to be a state actor" either "because he is a state official,

because he has obtained significant aid from a state official, or because his conduct is

otherwise chargeable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 102 S.Ct.

2744, 73 L.Ed.2d 482 (1982).

8. Federal Courts have jurisdiction over matters in order to issue declaratory and

injunctive relief where unconstitutional violations have occurred by a State official or an

official of a State subdivision. See Saenz v. Roe, 526 U.S. 489 (1999).  Federal courts can

also determine that legislation passed by a municipality is unconstitutional, see Goldberg

v. Town of Rocky Hill, 973 F.2d 70 (2nd Cir. 1992), and can also find State laws

4

unconstitutional based upon the facts presented in a federal lawsuit when the State's

Attorney General has been provided with timely notice that the constitutionality of a State

law has been drawn into question and raises issues about it.

9. Venue is proper under 28 U.S.C. §1391(a) because the cause of action arose in

the County of Suffolk. All parties are subject to the venue of this Court.

10. Plaintiffs are entitled to relief because they are aggrieved parties with standing

to file this civil rights action under 42 U.S.C. §1983.

11. To the extent that some of Plaintiffs' claims rest exclusively upon New York

State law, Plaintiffs request the Court adjudicate such claims under the Court's

supplemental jurisdiction pursuant to 28 U.S.C. §1367.

12. All conditions precedent to this action have been satisfied.

13. A formal notice of claim is not required for federal court jurisdiction over civil

rights violations asserted against a municipality or governmental law enforcement body

under 42 U.S.C. §1983. See Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d

123 (1988). See also Crist v. Town of Greenburgh, 156 F.R.D. 85 (S.D.N.Y. 1994). No

formal Notice of Claim pursuant to New York General Municipal § 50-h is required.


## ALLEGATIONS COMMON TO ALL COUNTS

14. On December 9, 2010, JANNETTI, through his attorneys, filed a summons and

complaint against WHELAN in the office of PASCALE. The complaint was predicated

upon a real estate contract between Plaintiffs and JANNETTI, and it made no allegations

of any exigent circumstances about any imminent transfer or mortgage of the property by

Plaintiffs. The complaint's caption stated "VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE".

15. On December 9, 2010, JANNETTI, through his attorneys, also filed a Notice of Pendency (signed and dated a day earlier) in the office of PASCALE, affecting Plaintiffs themselves and Plaintiffs' real property. [Exhibit 1], and PASCALE immediately and intentionally recorded it in COUNTY's publicly available real property records, without any notice or hearing being afforded to Plaintiffs by PASCALE or COUNTY.

16. On or about May 16, 2011, JANNETTI, through his attorneys, filed a second Notice of Pendency in the office of PASCALE, affecting Plaintiffs and Plaintiffs' real property. [Exhibit 2], and PASCALE intentionally and immediately recorded it in COUNTY's publicly available real property records without any notice or hearing being afforded to Plaintiffs by PASCALE or COUNTY.

17. On or about August 3, 2012, JANNETTI, through his attorneys, filed a third Notice of Pendency in the office of PASCALE, affecting Plaintiffs and Plaintiffs' real property. [Exhibit 4] and PASCALE intentionally and immediately recorded it in COUNTY's publicly available real property records without any notice or hearing being afforded to Plaintiffs by PASCALE or COUNTY.

18. On or before April 19 , 2011,  PASCALE and COUNTY were notified by Plaintiffs, through their counsel, of the Supreme Court's  April 7, 2011 decision that the first notice of pendency was cancelled, and yet PASCALE and COUNTY intentionally failed to take steps to promptly cause the cancellation, vacatur or removal of the

December 2010 notice of pendency to be promptly reflected in COUNTY's publicly available real property records so as to indicate its termination.

19. On June 13, 2012, PASCALE and COUNTY were notified by Plaintiffs, through their counsel, of the Supreme Court's decision that the second notice of pendency was judicially vacated, and yet PASCALE and COUNTY intentionally failed to take steps to promptly cause the cancellation, vacatur and removal of the May 2011 notice of pendency to be promptly reflected in COUNTY's publicly available real property records.

20. At no time did JANNETTI present any evidentiary documentary proof to PASCALE in order to meet JANNETTI's burden of proof in his lawsuit that JANNETTI was "ready, willing and able to perform" any real estate contract by demonstrating that he had the personal financial assets in his own name that would enable him to perform under the real estate contract under which JANNETTI was seeking a "judgment".

21. At no time did PASCALE or COUNTY require any evidentiary proof from JANNETTI in order to verify – or satisfy a Supreme Court Justice who was sitting that day in the courthouse and assigned to handle walk-in matters -- that JANNETTI met his burden of proof in a lawsuit that JANNETTI was in fact "ready, willing and able to perform" the real estate contract by demonstrating that he then had the personal financial assets in his own name that would enable him to perform under the real estate contract under which JANNETTI was seeking a "judgment" that "would affect" the property. Therefore, even if JANNETTI could prove that WHELAN repudiated the contract, JANNETTI could not satisfy his burden of proof of the having the money to close title.

7

22. Many New York courts, including New York's Court of Appeals, have explained in many cases that a plaintiff in an action seeking damages or specific performance (for a breach of contract claim, or for an anticipatory breach of contract claim, which is also sometimes called an anticipatory repudiation of contract claim) must prove and establish that he is "ready, willing and able" to perform the real estate contract.

23. In Pesa v. Yoma Development Group, Inc., 18 N.Y.3d 527, 965 N.E.2d 2, 942 N.Y.S. 2d 1 (2012) the Court of Appeals explained that it is always the plaintiff buyer's burden to prove, and not the defendant property owner's burden to disprove ("Since the buyers can more readily produce evidence of their own intentions and resources, it is reasonable to put the burden on them.")

24. Therefore, at the moment that any filer of a Notice of Pendency decides to file it for recordation, that filer is logically required to already have in his or her possession all of the documentary proof in evidentiary form that is required to satisfy the "ready, willing and able" element of his or her claim. This element of quantifiable personal financial resources held by plaintiff buyer is one that lends itself to documentary proof to support the legal conclusion that one is "ready, willing, and able" to purchase the property at the time a filer seeks to have PASCALE record a lis pendens.

25. In October 2012, after nearly 3 years of litigation (during which time JANNETTI stated in a brief filed at the Second Department Appellate Division that JANNETTI had not provided any of his financial assets information to WHELAN), JANNETTI finally produced to the Supreme Court and Plaintiffs photocopies of 2

8

redacted bank statements implying that that he had access to such monies shown on the redacted bank statements [Composite Exhibit 4]. Those monies were not his own to use.

26. One of the 2 photocopies of the redacted bank statements was that of a corporation called A.T. Conference, Inc. which, upon information and belief, is a corporation that is licensed by the Federal Communications Commission to do teleconferencing. JANNETTI attached a NYS DOS print out showing that he was that corporate entity's CEO but there were no corporate resolutions to show that he had access to the monies to buy a personal residence. Nor were those monies in his name on that day,

27. The other of the 2 photocopies of the redacted bank statements was a joint bank account with JANNETTI's wife Ellen Jannetti, against whom JANNETTI had filed for an action for divorce prior to December 9, 2010.

28. Neither of these bank statements were in admissible form under CPLR 4518 (or otherwise) and neither demonstrated that JANNETTI possessed these monies in his own name and were earmarked for the purchase of the property.

29. JANNETTI's assertion of a lawsuit for a "judgment" affecting "title" to WHELAN's property was not genuinely entitled to the recordation of a lis pendens on COUNTY's publicly available real property records because it was a ruse that was perpetrated in bad faith upon WHELAN by JANNETTI, PASCALE and COUNTY.

30. Under New York Domestic Relations Law 236, B2, neither party to a divorce action shall incur excessive debt nor dispose of monies in bank accounts without the prior written consent of the spouse or a court order, except for customary and usual household expenses and reasonable attorney's fees for divorce counsel.

9

31. Under the New York Domestic Relations Law, WHELAN could not gain access to JANNETTI's matrimonial file in <u>Jannetti v. Jannetti</u>, Suffolk Index # 09-42553 because of New York's sealing rule which applies to non-parties, however, the publicly available Court Actions computer summary indicates that no matrimonial judge had ever ordered that JANNETTI could use any funds in a jointly held bank account, or from any other presumptive marital asset, to purchase the WHELAN residence for $6,050,000 or any other amount, nor to obtain a substantial mortgage debt.

32. At all relevant times, PASCALE had access to the <u>Jannetti v. Jannetti</u> matrimonial divorce file and therefore she had constructive knowledge as to its contents and the lack of any court order that granted JANNETTI judicial permission to acquire Plaintiffs' property and the lack of any order allowing JANNETTI to also sign documents that would cause him to incur a substantial mortgage debt that was millions of dollars above a normal household expense.

33. Article 65 of New York's Civil Procedure Rules and Law provides a procedure for the filing and recording of a Notice of Pendency which is unconstitutional. It is unconstitutionally overbroad on its face and as applied to Plaintiffs. It is not narrowly tailored to achieve the government's interest and it transgresses WHELAN's constitutional rights.

34. CPLR 6501 and 6511 together provide, essentially, that the filing and "immediately" recording of a Notice of Pendency can occur simply because an attorney states that the WHEREFORE clause at the end of complaint seeks a "judgment" that "would affect title.....", use or possession. Taken together, these statutes completely fail

to facially contain any provision for prompt notice and a prompt hearing to be held by the

County Clerk to protect a property owner's constitutional rights in the sort of non-exigent

circumstances here where the person seeking to cause the Notice of Pendency (lis

pendens) to be filed and recorded is neither a mortgagee of record, nor a creditor to whom

a debt is owed due to some nexus with the property, nor a challenger to some former

conveyance or deed already existing in the property's chain of time.

35.  Article 65 may indeed be constitutional when it is used in connection with the

filing and recordation of a lis pendens in instances where there is a foreclosure of a

mortgage that already existed in the COUNTY's  publicly available mortgage foreclosure

records and/or where there is a legitimate question as to the validity of a prior deed that is

already existing in the chain of title as set forth in the COUNTY's property records.

These were the situations examined by the Second Circuit in Diaz v. Paterson,  547 F.3d

88 (2d Cir.  2008), 129 S. Ct. 2789 (2009) (cert denied).

36. However, Article 65 is unconstitutional on its face and as applied here  on these

facts because it is overbroad and it does not establish any notice and hearing process

arranged by PASCALE or COUNTY before their "immediately" recording a lis pendens,

instead shifting the burden of its extinguishment onto a property owner through  a

whirlpool of expensive and lengthy litigation in instances where logically any legitimate

filer should first  be required to demonstrate his or her financial ability to close title then

and there by the presentment of documentary evidence in admissible form to PASCALE

and COUNTY where there are no exigent circumstances presented in the complaint or

otherwise that would negate the presumption that prior prompt notice to the property owner is constitutionally required.

37. Upon information and belief, Suffolk County Supreme Court currently has over 13,000 pending foreclosure actions. In each instance, at least one Notice of Pendency has been filed, and COUNTY's and/or PASCALE's clerks "rubber stamp" the filing and then handle the immediate recordation of the lis pendens.

38. Upon information and belief, PASCALE's Clerk's office is understaffed because COUNTY has deliberately and intentionally failed to allocate sufficient monies in the COUNTY's budget to provide for adequate, well-trained staff to ensure that PASCALE's County Clerk's office functions in an efficient and constitutional manner.

39. COUNTY's deliberate and intentional failure to provide monies for the hiring of a sufficient number of well-trained competent assistant clerks has predictably led to the situation here, where multiple successive lis pendens were accepted for filing, filed and then recorded in the publicly available real estate records for Plaintiffs' property, notwithstanding the prohibition against successive filing in CPLR 6516.

40. COUNTY's intentional and deliberate failure to train PASCALE's staff not to accept successive lis pendens unless the statute so provides or a specific court order so directs, is the sort of situation where some training would have made a difference in a situation that often arises, and the failure to train and provide thoughtful guidance to employees has caused WHELAN to suffer damages, including the financial expense of the legal fees expended to ultimately obtain a court order to remove the second lis pendens from the COUNTY's publicly available real property records.

41.  Moreover, COUNTY and PASCALE have known for quite a long time that the Suffolk Clerk's office is understaffed, as evidenced by the fact that the unfiled court documents that have been  judicially ruled upon still remain in cartons in the Clerk's office week after week – sometimes for over a month – because there are not enough trained assistant clerks to file them in their court files.  The lack of any prompt filing system perpetuates the inherent problem because thousands of unfiled documents must frequently be looked through by the assistant clerks in order to locate a more recent original court order with a date stamp for purposes of an appeal or otherwise.

42.  COUNTY and PASCALE have thus acted in a manner to deprive Plaintiffs of their constitutional rights by failing to provide them with any notice and a hearing when JANNETTI provided the Notice of Pendency to them and DOES 1-5, and Defendants took the action that caused the recordation of a lis pendens on 3 separate occasions merely because the signer stated that a "judgment" affecting "title" was demanded in the complaint.

43. The procedure used by COUNTY and PASCALE is designed to deliberately shift the costs and expense of resolving erroneous deprivations of  a property owner's constitutional rights to the State of New York's New York Supreme Court budget, through a lengthy judicial process that is inherently unequal to similarly situated property owners. The bad faith treatment to which COUNTY and PASCALE subjected WHELAN has denied them Equal Protection because some judges will come to realize the lack of a plaintiff buyer's financial ability more quickly than others, some judges will allow discovery or stay it and therefore cause delays in elimination of the lis pendens, and some

judges will decide the cases on varying and different criteria, all of which could be avoided if the State had not promulgated an overbroad law that requires an "immediate" recording of a lis pendens just because a stranger to the chain of title claims he has made a "demand" for a "judgment" that "affects title".

44. The more cost efficient, less intrusive, and fairer procedure would be to have a State law that did not permit PASCALE to record a lis pendens offered by a filer in an anticipatory repudiation case unless or until that filer had provided PASCALE with some documentary evidence in admissible form to demonstrate that he had the financial wherewithal to complete the real estate transaction on that very day of filing and to promulgate a state law that requires that PASCALE or the other state actor, which is JANNETTI here, must give some advance notice to the property owners that a hearing by the County Clerk will occur on a specific date and time for a review of the filer's documentary evidence of his financial resources. It is (i) the lack of notice and any preliminary County Clerk hearing, when together with (ii) Article 65's use of the words "immediately record" that is unconstitutional. On these facts which show no real nexus, it is just as unconstitutional as Connecticut's ex parte writ of attachment which was struck down in Connecticut v. Doeher, 501 U.S, 1, 111 S.Ct, 2105, 115 L.Ed, 2d 1 (1991).

45. As a result of the conduct of all Defendants, Plaintiffs have been unable to freely transfer or mortgage their property for about 3 years, because that would have required a title insurance policy which cannot be accomplished so long as the lis pendens was on record, and Plaintiffs have sustained substantial financial damages, reputational injury, much distress and a transgression of many of their constitutionally protected rights.

46. Plaintiffs have no confidence that PASCALE or COUNTY will take any action to cancel, vacate or eliminate JANNETTI's multiple and successive Notice of Pendency documents from the Suffolk County's real property records absent a federal court order to do so.

47. Plaintiffs believe that that the continuing harm PASCALE and COUNTY has caused Plaintiffs will not cease because of a past and continuing history of their intentional conduct in derogation of Plaintiffs' constitutionally protected rights.

48. Plaintiffs now seek injunctive and declaratory relief, including interim and temporary relief, as well as financial compensation for the losses and harm sustained by Defendants' conduct.

49. Because JANNETTI's and PASCALE's conduct at issue here is capable of repetition and could otherwise evade any judicial review, Plaintiffs requests that the Court issue a declaratory judgment that declares COUNTY's and PASCALE's conduct is offensive to the United States Constitution and orders such permanent injunctive relief that prohibits PASCALE from recording any further Notice of Pendency brought to her by JANNETTI which pertain to this property or any other property owned by WHELAN.

## COUNT I:
### VIOLATION OF PLAINTIFF'S (AS WELL AS OTHERS') FIFTH, AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER 42 U.S.C. §1983 et seq.

50 . Plaintiffs reallege Paragraphs 1-49 and hereby incorporate same by reference.

51. New York's overbroad lis pendens statutes violate Plaintiffs' rights to Due Process and Equal Protection on their face and as applied.

52. CPLR Article 65 triggers a reputational injury to Plaintiffs themselves and an impairment of Plaintiffs' property rights that are sufficient to merit Due Process protections where the County Clerk records a lis pendens based upon the mere "demand" for a "judgment" of specific performance of a transfer of "title" being sought in a complaint for anticipatory repudiation of a real estate purchase contract, without ever having the County Clerk preliminarily review any actual documentary evidence that would tend to establish probable cause for any such demand.

53. The recorded lis pendens is a document that has a significant adverse impact upon the property owners' private interests, such as a tainted credit rating, ability to procure even a small mortgage through a home equity loan to make needed home repairs, and an impaired ability to alienate the property. A recorded lis pendens may cause a default in the terms of an existing recorded mortgage on the property..

54. A claim for repudiation of a real estate contract made against a property owner is even graver than a defamation claim implying that the property owners were repudiators who reneged on a transaction, because it both stigmatizes the property owner and his real property as well.

53. An "immediately" recorded lis pendens affiliated with such a claim is a governmentally imposed badge of disgrace that insinuates that there are grounds for immediate governmental action by the County Clerk due to a suspicion of some unlawful conduct by the property owner and it implies to the public that the government has a legal

16

right under State statute to change the status of the real property from freely alienable into one that has a lis pendens attached to it by the County Clerk which must await full judicial review. JANNETTI's meritless claim is still pending in pre-trial proceedings.

56. The procedure followed here by PASCALE – to "immediately record" a filer's Notice of Pendency on the very same day it is presented to the PASCALE – appears to be an administrative one that is required by Article 65, rather than one which involved any discretion on PASCALE's part. Nevertheless, such conduct is unconstitutional following Doehr unless the definition of "immediate" can be judicially construed by this federal court to first allow a very prompt hearing on notice to the property owner to verify that the filer indeed has the funds to close the real estate transaction. However, even a cursory glance at the County Clerk's computer would have shown PASCALE that the Notice of Pendency dated December 8, 2010 contained a false statement by JANNETTI's Attorney Sigmund Semon because in fact the complaint was not filed until December 9, 2010.

57. Other procedures followed here by PASCALE -- insofar as intentionally failing to promptly remove a lis pendens from the record after first being provided with a court order that terminated it and/or PASCALE intentionally recording 3 successive lis pendens without statutory authorization or a prior court order therefor -- is not conduct that can be justified under the Article 65.

58. Under Article 65, the risk of erroneous deprivation is extremely high where, as here, the filer of the subsequently recorded lis pendens provides a one-sided, self-serving and conclusory complaint that may state a cause of action based upon being "ready, willing and able" but which in fact has no actual factual support by proof of the filer

17

having the personal financial wherewithal to actually close title on the date the complaint

for specific performance (due to alleged anticipatory repudiation of a real estate contract)

is signed and filed.

59. A party who submits a lis pendens for recordation without having such proof

of present financial ability to close title under a contract, and without any identifiable

stated exigent circumstances, fails to demonstrate a bona fide existing relationship to the

real property. Such a litigant has only a hopeful wish that the property will one day be his

if he can obtain the monies to later purchase when he acquires some future cash to do so.

Without any such substantiated nexus by demonstration of a filer's financial ability to

immediately close title, the rule applied in Diaz v. Paterson cannot apply here because the

filer has no true nexus to the property and the filing is a State sanctioned coercive tactic.

60. In fact, a person, such as JANNETTI, who filed a complaint for anticipatory

repudiation is likely to be someone who is "gaming the system" in New York, by hoping

to keep the property under his control even though he lacks the financial wherewithal to

complete the transaction right then and knows very well that he could never pass the test

to obtain a writ of attachment because his claim to title lacks probable cause if challenged

by the property owner who was provided with advance notice,

61. A lawsuit in which an anticipatory repudiation claim is asserted is unlike a

lawsuit that is brought by an existing mortgagee of record or an existing creditor who

performed repairs on the property and improved it. Therefore, Article 65 is overbroad.

62. Although New York has an interest in ensuring that a filer's claim to a

judgment is not frustrated by a pendente lite transfer or encumbrance of the property to an

innocent third party who lacks notice, such a State imposed protective measure would not be compromised by a requirement that the filer simultaneously demonstrate to the County Clerk through documentary evidence that he has met his burden of proof under Pesa v. Yoma Development and has a certified bank check made out to the property owner or has set aside all the monies needed to close title in a separate bank account in his own name – or attorneys trust account -- that is designated solely for that purpose of purchase.

63. Such a clerical review should be performed on notice to the property owner in all but the most exigent circumstances. And disputes that are not resolved by the County Clerk to the filer's satisfaction should be argued before the Supreme Court Justice who is sitting on that day to hear such emergency and/or contested situations.

64. Defendants' conduct caused harm to Plaintiffs because they were unable to obtain a construction loan on the property in order to make the needed repairs and take the preventative measures to protect their house from the imminent winter storm dangers

65. Defendants' conduct caused Plaintiffs harm because there have been multiple Notice of Pendency documents filed over the course of 3 years, without any prior notice or any hearing held by PASCALE or the COUNTY or the Clerk's office provide to Plaintiffs, when in fact neither JANNETTI nor PASCALE nor the COUNTY has even a shred of documentary proof that JANNETTI had the financial wherewithal to close the real estate transaction on December 9, 2010, or anytime in December 2010, which is an essential element of a cause of action for anticipatory repudiation of a real estate contract.

66. Such a series of recorded and continuing lis pendens, which were imposed upon Plaintiffs and their property in bad faith by PASCALE and her staff (who just willy-

nilly stamped and recorded lis pendens without even a meaningful short review or any

Due Process at all as to their removal when required) have caused Plaintiffs harm and

they must all be judicially expunged by a directive of the federal court that orders

PASCALE to do that forthwith.

67.   All Defendants are financially responsible for the harm they have caused

Plaintiffs, including Plaintiffs' attorneys fees in this action and in the state courts.

**COUNT II:**
**VIOLATION OF PLAINTIFF'S (AS WELL AS OTHERS') FIRST**
**AND FOURTEENTH AMENDMENT RIGHTS TO FREE SPEECH**
**AND EQUAL PROTECTION UNDER 42 U.S.C. §1983 et seq.**

68.   Plaintiffs reallege Paragraphs 1- 49 and 51-65  and hereby incorporate same by

reference.

69. By acting in bad faith and intentionally failing to verify that no prior Notice of

Pendency had been filed in the lawsuit, and by intentionally eschewing  CPLR Rule 6516

that precludes the filing recordation of successive notice of pendency unless the lawsuit is

a mortgage foreclosure case, Defendants transgressed Plaintiffs' right to Equal Protection

because Plaintiffs were treated differently than other property owners who were similarly

situated.

70 . By acting in bad faith and  intentionally failing to cause the prompt removal of

a Notice of Pendency that had been filed in the lawsuit and was judicially eliminated,

Defendants transgressed Plaintiffs' right to Equal Protection because Plaintiffs were

treated differently than other property owners who were similarly situated.

71. By failing to even perform a meaningful short review of any documentary evidence to support JANNETTI's fictional claim that he was "ready, willing and able" to close title on December 9, 2010 and therefore entitled to a "judgment" affecting "title" (based on an allegation of WHELAN's purported repudiation), Defendants transgressed Plaintiffs' constitutional rights.

72. Defendants "suspended" Plaintiffs' reputational and property rights until an uncertain future date sometime by which time JANNETTI's documentary proof will ultimately be reviewed by an appellate court and perhaps by an appellate court.

73. In the interim, however, for 3 years, due to Defendants' intentional conduct as set forth above, Plaintiffs' rights have been "suspended" by the Clerk by JANNETTI's ex parte request without PASCALE ever holding any hearing after notice to WHELAN.

74. Plaintiffs have been labeled by PASCALE and COUNTY with a badge of infamy even though JANNETTI's complaint did not allege any bad faith conduct on WHELAN's part but merely a repudiation. The imposition of a change in status of the property and in Plaintiffs' rights has foreclosed the possibility of Plaintiffs obtaining a typical title insurance policy, which is a necessary condition of obtaining even a small homeowner's loan to do repairs.

75. Instead of providing even a prompt post-recording hearing, which is not expressly prohibited under Article 65 and which would at least have the salutary effect of ensuring that the filer provide copies of the documents for his claim of financial readiness to a property owner within 15 days, PASCALE and COUNTY thrust Plaintiffs into the legal system that inherently treats litigants differently in terms of timing, depending upon

how soon the assigned Supreme Court Justice is able to analyze the facts and resolve discovery disputes.

76. Plaintiffs have been in this quagmire for 3 years, although JANNETTI never mustered any documentary proof that he had the available funds to close title in December 2010. JANNETTI's claimed sources of monies – some joint bank accounts with a divorcing spouse and a bank account in the name of a corporation who JANNETTI never identified in the contract or the state lawsuit – is not evidence of his own personal assets under the relevant standards under Island Auto Seat Cover Co., Inc. v. Minunni, 60 A.D. 3d 570 (2d Dept. 2010). JANNETTI abused his status as a state actor by false filings.

77. Moreover, Article 65's requirement of the County Clerk's "immediate" recording in the property records, coupled with any lack of even a post-deprivation hearing in non-exigent circumstances where the filer claims merely an anticipatory breach due to repudiation as to a future closing date, compels a property owner to be forced to speak in a public judicial forum simply to preserve property rights and reputational interests that should not have been taken away from a property owner in the first place by the County Clerk's "immediate" recording of a lis pendens by a complete stranger to the chain of title and mortgage records. Thus, Defendants shifted the burden of making a motion for extinguishment of an unconstitutionally imposed lis pendens onto Plaintiffs, when Plaintiffs were entitled to refrain from speaking, which right they could have exercised had Defendants not so impetuously caused the lis pendens to be recorded with prior notice and a prior hearing under these non-exigent circumstances.

22

78. By Defendants' conduct, Plaintiffs were forced to publicly describe their real property in the public records as one that had the stigmatizing status of a property with a recorded lis pendens on it, when they would have preferred to remain silent. This speech was imposed upon Plaintiffs by the government, including PASCALE and COUNTY. Any violation of the First Amendment's Free Speech Clause – including even a short one – is a violation of an important constitutional right and on these facts, where PASCALE immediately recorded multiple lis pendens without any hearing or exigent circumstances and then did not promptly remove such a stigma when she was required to do so by law.

79. Based upon the foregoing, Defendants transgressed Plaintiff's rights under the Equal Protection Clauses  and Free Speech Clauses and therefore Plaintiffs are entitled to be financially compensated and have the Court grant equitable relief that appropriately resolves the matter in Plaintiffs' favor.

**COUNT III:**
**VIOLATION OF PLAINTIFF'S (AS WELL AS OTHERS')**
**FIRST, FOURTH AND FOURTEENTH AMENDMENT**
**RIGHTS TO LIBERTY INTERESTS AND REPUTATIONAL**
**INTERESTS  UNDER 42 U.S.C. §1983 et seq.**

80. Plaintiffs reallege Paragraphs 1-49, 51- 67, and 69-79 and hereby incorporate same by reference.

81. The Fourth Amendment protects the exercise of one's liberty interests, which is one of the quintessential rights protected under the Constitution's right to "life, liberty and the pursuit of happiness."

82. The right to be at liberty to transfer, alienate, mortgage and lease out one's real property on the same terms at the rest of the citizenry is a right that ought not to be taken

away without notice and a prompt hearing by a government official in order to relieve a person from the imposition of decisions made by those governmental officials.

83. Whenever the government imposes a change of status of a person or his property and an accompanying stigma that thwarts or defeats such a typically unfettered liberty right through a process of public notification, embarrassment and humiliation, and disparagement of a person's name, honor and integrity, the First, Fourth and Fourteenth Amendments are transgressed if the appropriate safeguards are not provided.

84. In <u>Wisconsin v. Constantineau</u>, 400 U.S, 433 (1971), the United States Supreme Court struck down a state law that authorized the posting of a notice with the names of persons the police official considered to be drunkards, because no hearing was provided by the governmental decision maker and the state law did not require one. The right to be at liberty to sell and mortgage one's real property as the rest of the citizenry can do is at least as important as the right to be at liberty to buy liquor.

85. The Second Circuit has held that one's freedom and liberty interests can be constitutionally infringed even when that individual is not in a jail cell, <u>Murphy v. Lynn</u>, 118 F.3d 938 (2d Cir. 1997), and that having to attend court appearances in order to have the government address one's right to liberty is itself an infringement of a liberty interest.

86. While well aware of the understaffing, vagaries and delays in the County Clerk's office, PASCALE and COUNTY denied Plaintiffs the opportunity for a prompt County Clerk hearing on notice, at which time JANNETTI would have been forced to produce authentic and credible documents (to PASCALE and Plaintiffs) detailing his personal available personal finances on December 9, 2010. JANNETTI's lack of funds in

his own name would have become more apparent much earlier and the lis pendens could have been judicially removed much earlier in JANNETTI's frivolous lawsuit and/or JANNETTI might not have been successful in even having his lis pendens recorded.

87. Thus, PASCALE and COUNTY shifted the burden of proof onto WHELAN when it belongs on JANNETTI if a lis pendens was to be sustainable. Even holding a hearing as to the second or third lis pendens on notice to WHELAN would have been helpful to WHELAN, yet PASCALE did not even do that, and instead recorded multiple successive notices of pendency without authorization by law.

88. The mere rationale that the public may be curious to know which properties are the subject of a lawsuit in order to protect a potential third party without first providing notice and a hearing to a property owner in non-exigent circumstances, does not meet the constitutional requirements that are to be strictly imposed upon the government.

89. PASCALE's conduct insofar as the "immediate" recording of a lis pendens (3 times) without offering WHELAN any prior notice or a hearing must be held unconstitutional for the same reasons that (i) Ms. Constantineau should not suffer the stigma of being listed as a drunkard without the ability to purchase liquor and (i) Amestoy cannot force Vermont's dairies to label their milk about its hormone content.

90. There is no evidence that the State's command of "immediate" recording could have not have been tempered with PASCALE directing JANNETTI to appear with WHELAN at her office and the necessary proof of financial readiness on 24 hours' notice. There is only a very remote possibility that WHELAN or any property owner may

intentionally deceive an unnamed innocent third party by concealing the existence of a pending lawsuit seeking specific performance.

91.  When all consideration of the equities is balanced,  the public's curiosity is far outweighed by  a property owner's interest in a home, which is likely his largest asset. There is a constitutional requirement that notice and an opportunity to be heard must be provided to a property owner before a property owner's good  name and reputation is besmirched and the real property is clerically hindered by the recordation of a meritless lis pendens.  The property should not be governmentally restricted without an accompanying hearing in the context of a claim for anticipatory repudiation improvidently asserted by a demonstrably fiscally unqualified "buyer"  who lacks the personal funds to close title on the day that he commences his action and is using New York's unconstitutional procedures to subject a property owner to a deprivation of constitutional rights.

92. Defendants' conduct was in violation of their constitutionally protected rights and caused damages to Plaintiffs.

**COUNT IV**
**VIOLATION OF  NEW YORK'S CPLR ARTICLE 65**
**AND A DEMAND THAT CERTAIN PORTIONS THEREOF**
**BE DECLARED UNCONSTITUTIONAL**

93.  Plaintiffs reallege Paragraphs 1-49, 51- 67, 69-79 and 81-92 and hereby incorporate same by reference.

94. Plaintiffs request that the Court determine that PASCALE,  JANNETTI and COUNTY and DOES 1-5 violated New York CPLR 65 in independent and  conjoined efforts to defeat Plaintiffs'  rights to have their property free of any lis pendens that does

not conform to New York law as it them existed, including CPLR 6516 which prohibits successive and multiple lis pendens being recorded.

95. Plaintiffs have been damaged by Defendants' conduct.

96. Plaintiffs also seek a declaratory judgment that declares portions of CPLR 6501 and 6511 unconstitutional, facially and as applied, insofar as lawsuits brought by a person who was previously a stranger to the chain of title and is asserting a claim for breach of contract and/or anticipatory breach of contract. Those Article 65 provisions do not provide the property owner with any notice and a hearing by the County Clerk who records the lis pendens "immediately". Awaiting a lengthy and expensive judicial resolution of the issue after some formal discovery is constitutionally inadequate in situations like that caused by JANNETTI's meritless lawsuit where the filer cannot immediately sustain his burden of proof as to his financial ability to close title on the same day that he files the anticipatory breach of contract claim.

97. Plaintiffs also seek injunctive relief that directs PASCALE to reflect in the COUNTY's property records that there is no viable constitutional lis pendens and to prevent her from accepting any other lis pendens on this property from JANNETTI.

## DEMAND FOR JURY TRIAL

98. Plaintiffs request a trial by jury on any factual issues for which a trial by jury is appropriate in the context of this case.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs pray for relief as follows:

27

(1)   Damages against Defendants in an amount of $450,000.00 or such greater amount if such greater amount is actually proven at trial (the figure $450,000+ to be reflected on civil cover sheet, without limitation of damages to such amount);

(2)   a declaratory judgment that declares that the portions of CPLR 6501 and 6511 that combine to deny prompt notice and a prior hearing and/or a prompt post-deprivation hearing before "immediate" recordation of a lis pendens are facially unconstitutional insofar as being overbroad in situations where the person filing the Notice of Pendency damands a "judgment" affecting title but is neither a mortgagee of record, a creditor for a debt for improvement on the real property, or a challenger of the validity of a prior conveyance in the chain of title and fails to demonstrate documentary proof of his own personal financial ability to purchase the property (in the form of admissible evidence) on the same date that the complaint stating "ready, willing and able" is filed.;

(3)   a declaratory judgment that declares Defendants' conduct transgresses the United States Constitution as Article 65 was applied to Plaintiffs;

(4)   permanent injunctive relief directing PASCALE to eliminate all of JANNETTI's Notice of Pendency and lis pendens from the COUNTY's property records referencing Plaintiffs' property, and also prohibits PASCALE from recording any further Notice of Pendency provided by JANNETTI;

(5)   Costs of this action;

(6)   Statutory attorneys fees under 42 U.S.C. §1988; and

(7)   Awarding such other legal and equitable relief as the court deems just and proper.

Dated:   December 9, 2013

Respectfully submitted,

*Patricia Weiss, Esq.*

Patricia Weiss, Esq. (PW-6095)
Attorney for Plaintiffs
Sag Harbor Shopping Cove
78 Main Street – Suite 14
P.O. Box 751
Sag Harbor, NY 11963
Tel. (631) 725-4486
Fax (631) 725-0295
PWESQSAG@aol.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

**ORIGINAL**

-------------------------------------------------------X

DAVID JANNETTI,

Index No.

Plaintiff,

10 44564

-against-

**NOTICE OF PENDENCY**

MARY M. WHELAN and DAVID J. WHELAN,

Defendants.

-------------------------------------------------------X

S I R S :

      Notice is hereby given that an action has been commenced and is now pending in this court upon the Complaint of David Jannetti against the above-named defendants, filed with the Suffolk County Clerk's office for inter alia, a judgment for specific performance directing the defendant to convey title of the real property to plaintiff.

      The premises affected by this action is situated entirely within the County of Suffolk, tax map designation 901-06-05-37 (also known as Suffolk County, Section 06, Block 05, Lot 37) as more particularly set forth in the meets and bounds description attached hereto as being the property which is affected by the notice of pendency of this action and are bounded and described as follows:

      ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of North Haven, Town of Southampton, County of Suffolk and State of New York, shown and designated as Lot #50 on a certain Map entitled "Subdivision Map of Bay Haven, situate North Haven, Town of Southampton, Suffolk County, New York, owner and developer, James McCrosson, Sag Harbor New York", made by Theodore F. Squires and filed in the Office of the Clerk of the County of Suffolk on January 23, 1947 as Map No. 1520, said lot being more particularly bounded and described as follows:

      BEGINNING at a monument on the easterly side of East Harbor Drive, said monument being distant the following two (2) courses and distances

528567

1

Exhibit 1

from the extreme southerly end of a curve connecting the southerly side of South Harbor Drive with the westerly side of East Harbor Drive:

1. South 15 degrees 57 minutes 40 seconds West, 51.23 feet;
2. South 63 degrees 20 minutes 00 seconds East, 51.83 feet to the true point or place of beginning:

RUNNING THENCE along land now or formerly of Janice Conklin, South 63 degrees 20 minutes 00 seconds East, 246.45 feet to tie lines along mean high water mark of Shelter Island Sound as of 3/04;

THENCE along said tie lines, the following two (2) courses and distances:

1. South 18 degrees 39 minutes 08 seconds West, 80.05 feet;
2. South 50 degrees 52 minutes 07 seconds West, 22.73 feet to land now or formerly of Bay Haven Association, Inc.;

THENCE along said last mentioned land, North 63 degrees 20 minutes 00 seconds West, 229.39 feet to a monument on the easterly side of East Harbor Drive;

THENCE along the easterly side of East Harbor Drive, North 15 degrees 57 minutes 40 seconds East, 101.77 feet to the monument at the point or place of BEGINNING.

Dated: Mineola, New York
      December 8, 2010

To the Suffolk County Clerk:        Yours, etc.,
You are hereby directed to index
this Notice of Pendency against       MELTZER, LIPPE,
the Defendants herein.           GOLDSTEIN & BREITSTONE, LLP

                            By:
                              SIGMUND S. SEMOFF, ESQ.
                      *Attorneys for Plaintiff*
                      190 Willis Avenue
                      Mineola, New York 11501
                      (516) 747-0300

TO:   MARY M. WHELAN and DAVID J. WHELAN
      12 East Harbor Drive
      Sag Harbor, New York 11963

528567                        2

**COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a**

To the best of the undersigned's knowledge, information and belief formed after an inquiry reasonable under the circumstances, the within document(s) and contentions contained herein are not frivolous as defined in 22 NYCRR §130-1.1-a.

Dated: Mineola, New York
December 8, 2010

Sigmund S. Semon, Esq.

528567                                    3







# SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: LIS PENDENS      Recorded: 09-Dec-2010
Index Number: 10 44564      Sequence Number: 227006
Plaintiff(s):
     JANNETTI, DAVID

Defendant(s):
     WHELAN, MARY M.; WHELAN, DAVID J.; ET AL

Tax Map ID(s):
     1      0901-006.00-05.00-037.000

Liber Page(s):

**THIS PAGE IS A PART OF THE INSTRUMENT**
**THIS IS NOT A BILL**

Judith A. Pascale
County Clerk, Suffolk County

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X

DAVID JANNETTI,

Index No. 44564/10

*Copy*

Plaintiff,

**NOTICE OF PENDENCY**

-against-

MARY M. WHELAN and DAVID J. WHELAN,

Defendants.
-------------------------------------------------------------------X

S I R S :

Notice is hereby given that an action has been commenced and is now pending in this

court upon the Complaint of David Jannetti against the above-named defendants, filed with the

Suffolk County Clerk's office for inter alia, a judgment for specific performance directing the

defendant to convey title of the real property to plaintiff and to foreclose the purchaser's lien

arising out of the lien created by the purchaser's down payment.

The premises affected by this action is situated entirely within the County of Suffolk, tax

map designation 901-06-05-37 (also known as Suffolk County, Section 06, Block 05, Lot 37) as

more particularly set forth in the meets and bounds description attached hereto as being the

property which is affected by the notice of pendency of this action and are bounded and

described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the Incorporated
Village of North Haven, Town of Southampton, County of Suffolk and
State of New York, shown and designated as Lot #50 on a certain Map
entitled "Subdivision Map of Bay Haven, situate North Haven, Town of
Southampton, Suffolk County, New York, owner and developer, James
McCrosson, Sag Harbor New York", made by Theodore F. Squires and
filed in the Office of the Clerk of the County of Suffolk on January 23,
1947 as Map No. 1520, said lot being more particularly bounded and
described as follows:

BEGINNING at a monument on the easterly side of East Harbor Drive,
said monument being distant the following two (2) courses and distances

543541-1

*Exhibit 2*

from the extreme southerly end of a curve connecting the southerly side of South Harbor Drive with the westerly side of East Harbor Drive:

1. South 15 degrees 57 minutes 40 seconds West, 51.23 feet;
2. South 63 degrees 20 minutes 00 seconds East, 51.83 feet to the true point or place of beginning;

RUNNING THENCE along land now or formerly of Janice Conklin, South 63 degrees 20 minutes 00 seconds East, 246.45 feet to tie lines along mean high water mark of Shelter Island Sound as of 3/04;

THENCE along said tie lines, the following two (2) courses and distances:

1. South 18 degrees 39 minutes 08 seconds West, 80.05 feet;
2. South 50 degrees 52 minutes 07 seconds West, 22.73 feet to land now or formerly of Bay Haven Association, Inc.;

THENCE along said last mentioned land, North 63 degrees 20 minutes 00 seconds West, 229.39 feet to a monument on the easterly side of East Harbor Drive;

THENCE along the easterly side of East Harbor Drive, North 15 degrees 57 minutes 40 seconds East, 101.77 feet to the monument at the point or place of BEGINNING.

Dated: Mineola, New York
      May 13, 2011

To the Suffolk County Clerk:        Yours, etc.,
You are hereby directed to index
this Notice of Pendency against      MELTZER, LIPPE,
the Defendants herein.            GOLDSTEIN & BREITSTONE, LLP

                         By: _____
                            PEDRAM A. TABIBI, ESQ.
                     *Attorneys for Plaintiff*
                     190 Willis Avenue
                     Mineola, New York 11501
                     (516) 747-0300

TO:    David Lee Heller, Esq.
       *Attorney for Defendants*
       3334 Noyac Road, Suite 1
       Sag Harbor, New York 11963

## COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a

To the best of the undersigned's knowledge, information and belief formed after an inquiry reasonable under the circumstances, the within document(s) and contentions contained herein are not frivolous as defined in 22 NYCRR §130-1.1-a.

Dated: Mineola, New York
May 13, 2011

Pedram A. Tabibi, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------------X
DAVID JANNETTI,

                                        Index No. 44564/10

                            Plaintiff,

                                        **AFFIDAVIT OF**
        -against-                       **SERVICE**

MARY M. WHELAN and DAVID J. WHELAN,


                                        Defendants.
------------------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NASSAU       )

        JANICE MAURO-DOUGLASS being duly sworn, deposes and says:  I am not a party to
this action; I am over 18 years of age; I reside in Nassau County, New York

        On May 13, 2011, I served a true and correct copy of the annexed AMENDED NOTICE
OF PENDENCY by delivering same, in a properly addressed, postage-paid wrapper, and caused
it to be deposited in an official depository under the exclusive care and custody of Federal
Express for delivery to the last known address of:

                David Lee Heller, Esq.
                *Attorney for Defendants*
                3334 Noyac Road, Suite 1
                Sag Harbor, New York 11963



                                        _Janice Mauro-Douglass_
                                        JANICE MAURO-DOUGLASS

Sworn to before me this
13th day of May, 2011


_____
        Notary Public

        PATRICIA G. HENNESSY
    Notary Public, State of New York
            No. 4768773
        Qualified in Nassau County
    Commission Expires 11-30-2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X

DAVID JANNETTI,

                              Plaintiff,

        -against-

MARY M. WHELAN and DAVID J. WHELAN,

                              Defendants.
-------------------------------------------------------------------X

Index No. 44564/2010

8/3/12

**NOTICE OF PENDENCY**

**FILED**

AUG 03 2012

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

S I R S :

        Notice is hereby given that an action has been commenced and is now pending in this

court upon the Complaint of David Jannetti against the above-named defendants, filed with the

Suffolk County Clerk's office for inter alia, a judgment for specific performance directing the

defendants to convey title of the real property to plaintiff.

        The premises affected by this action is situated entirely within the County of Suffolk, tax

map designation 901-06-05-37 (also known as Suffolk County, Section 06, Block 05, Lot 37) as

more particularly set forth in the meets and bounds description attached hereto as being the

property which is affected by the notice of pendency of this action and are bounded and

described as follows:

60°
8-3-12

REAL PROPERTY
SUFFOLK
COUNTY
SERVICE AGCY

0901
00600
0500
037000

        ALL that certain plot, piece or parcel of land, with the buildings and
        improvements thereon erected, situate, lying and being in the Incorporated
        Village of North Haven, Town of Southampton, County of Suffolk and
        State of New York, shown and designated as Lot #50 on a certain Map
        entitled "Subdivision Map of Bay Haven, situate North Haven, Town of
        Southampton, Suffolk County, New York, owner and developer, James
        McCrosson, Sag Harbor New York", made by Theodore F. Squires and
        filed in the Office of the Clerk of the County of Suffolk on January 23,
        1947 as Map No. 1520, said lot being more particularly bounded and
        described as follows:

        BEGINNING at a monument on the easterly side of East Harbor Drive,
        said monument being distant the following two (2) courses and distances
        from the extreme southerly end of a curve connecting the southerly side of
        South Harbor Drive with the westerly side of East Harbor Drive:

587744-1

*Exhibit 3*

1. South 15 degrees 57 minutes 40 seconds West, 51.23 feet;
2. South 63 degrees 20 minutes 00 seconds East, 51.83 feet to the true point or place of beginning;

RUNNING THENCE along land now or formerly of Janice Conklin, South 63 degrees 20 minutes 00 seconds East, 246.45 feet to tie lines along mean high water mark of Shelter Island Sound as of 3/04;

THENCE along said tie lines, the following two (2) courses and distances:

1. South 18 degrees 39 minutes 08 seconds West, 80.05 feet;
2. South 50 degrees 52 minutes 07 seconds West, 22.73 feet to land now or formerly of Bay Haven Association, Inc.;

THENCE along said last mentioned land, North 63 degrees 20 minutes 00 seconds West, 229.39 feet to a monument on the easterly side of East Harbor Drive;

THENCE along the easterly side of East Harbor Drive, North 15 degrees 57 minutes 40 seconds East, 101.77 feet to the monument at the point or place of BEGINNING.

Dated: Mineola, New York
      August 2; 2012

To the Suffolk County Clerk:
You are hereby directed to index
this Notice of Pendency against
the Defendants herein.

Yours, etc.,

MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP

By: _Pedram Tabibi_
    PEDRAM A. TABIBI, ESQ.
*Attorneys for Plaintiff*
190 Willis Avenue
Mineola, New York 11501
(516) 747-0300

TO:    MARY M. WHELAN and DAVID J. WHELAN
       12 East Harbor Drive
       Sag Harbor, New York 11963

## COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a

To the best of the undersigned's knowledge, information and belief formed after an inquiry reasonable under the circumstances, the within document(s) and contentions contained herein are not frivolous as defined in 22 NYCRR §130-1.1-a.

Dated: Mineola, New York
       August 2, 2012

_Pedram Tabibi_

Pedram A. Tabibi, Esq.

587744-1                                          3

**CHASE ⬡**

December 01, 2010 -
December 31, 2010

**Page 27 of 27**

**Account Number**



A T CONFERENCE INC
DBA TIGER COMMUNICATIONS
DBA A PROFESSIONAL CONFERENCE CALL

## Commercial Checking
(continued)

---

**Total    80 check(s)**                                                         **$163,002.57**
* indicates gap in sequence

## Daily Balance

| Date | Ledger Balance | Date | Ledger Balance |
|------|---------------:|------|---------------:|
| 12/01 | $1,763,297.04 | 12/17 | $1,665,207.68 |
| 12/02 | $1,725,873.87 | 12/20 | $1,508,909.47 |
| 12/03 | $1,742,748.09 | 12/21 | $1,530,646.70 |
| 12/06 | $1,745,952.14 | 12/22 | $1,455,120.70 |
| 12/07 | $1,786,336.81 | 12/23 | $1,477,431.57 |
| 12/08 | $1,810,982.80 | 12/24 | $1,481,633.61 |
| 12/09 | $1,704,620.01 | 12/27 | $1,490,507.61 |
| 12/10 | $1,672,712.23 | 12/28 | $1,494,382.93 |
| 12/13 | $1,572,375.39 | 12/29 | $1,322,798.23 |
| 12/14 | $1,594,547.11 | 12/30 | $1,361,489.57 |
| 12/15 | $1,616,904.74 | 12/31 | $614,211.12 |
| 12/16 | $1,632,420.85 | | |

---

Your service charges, fees and earnings credit have been calculated through account analysis.

Composite Exhibit 4


**CHASE**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 10, 2010 through January 11, 2011
Primary Account: ▇▇▇▇▇▇▇▇

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-935-9935** |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

ɪ‖ɪɪ‖ɪ‖ɪ‖ɪɪ‖ɪɪ‖ɪ‖ɪɪ‖ɪɪ‖ɪ‖ɪ‖ɪɪ‖ɪ‖ɪɪ‖ɪɪ‖ɪ‖
00003831 DRI 802 219 01211 - NYNNNNNNNNN P 1 000000000 07 0000
DAVID JANNETTI
OR ELLEN K JANNETTI
16 E HARBOR DR
SAG HARBOR NY 11963-1219



## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Premier Checking | ▇▇▇▇▇▇▇ | $51,568.71 | $45,142.95 |
| Chase Plus Savings | ▇▇▇▇▇▇ | 95,916.18 | 95,959.51 |
| Chase Plus Savings | ▇▇▇▇▇▇▇ | 95,916.08 | 95,959.41 |
| Chase Plus Savings | ▇▇▇▇▇▇▇ | 95,916.08 | 95,959.41 |
| **Total** | | **$339,317.05** | **$333,021.28** |

| | | | |
|---|---|---|---|
| **TOTAL ASSETS** | | **$339,317.05** | **$333,021.28** |

**All Summary Balances** shown are as of January 11, 2011 unless otherwise stated. For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements. Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

# NYS Department of State

## Division of Corporations

## Entity Information

**The information contained in this database is current through October 7, 2013.**

---

**Selected Entity Name: A T CONFERENCE INC.**
**Selected Entity Status Information**

|  |  |
|--:|:--|
| **Current Entity Name:** | A T CONFERENCE INC. |
| **DOS ID #:** | 3250208 |
| **Initial DOS Filing Date:** | AUGUST 30, 2005 |
| **County:** | SUFFOLK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

**Selected Entity Address Information**

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)
A T CONFERENCE INC.
33 FLYING POINT RD
STE 250
SOUTHAMPTON, NEW YORK, 11968

**Chief Executive Officer**
DAVID JANNETTI
51 OAK GROVE ROAD
SOUTHAMPTON, NEW YORK, 11968

**Principal Executive Office**
A T CONFERENCE INC.
33 FLYING POINT RD
SUITE 250
SOUTHAMPTON, NEW YORK, 11968

**Registered Agent**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    X

DAVID J. WHELAN  and MARY M. WHELAN,
                                    Plaintiffs          # 13-CV-

        - against -

JUDITH A. PASCALE, individually and in her
official capacity as Clerk of the County of Suffolk,
New York,  COUNTY OF SUFFOLK,
DAVID JANNETTI and DOES 1-5,
                                    Defendants.
_____X


## COMPLAINT


Patricia Weiss, Esq. (PW-6095)
Attorney for Plaintiffs
Sag Harbor Shopping Cove
78 Main Street – Suite 14
P.O. Box 751
Sag Harbor, NY 11963
Tel. (631) 725-4486
Fax (631) 725-0295
PWESQSAG@aol.com

30