UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-cv-6998(JFB)(AKT)

DAVID J. WHELAN AND MARY M. WHELAN,

Plaintiffs,

VERSUS

JUDITH A. PASCALE, COUNTY OF SUFFOLK, DAVID JANNETTI, AND DOES 1-5,

Defendants.

**MEMORANDUM AND ORDER**
September 16, 2014

JOSEPH F. BIANCO, District Judge:

Defendants move to dismiss, under Federal Rule of Civil Procedure 12(b)(6), plaintiffs' claims challenging the constitutionality of Article 65 of the New York Civil Practice Law and Rules. In a lawsuit in New York state court, defendant David Jannetti ("Jannetti") sought specific performance of a real estate contract in which he agreed to purchase plaintiffs' home in Suffolk County. As part of the state lawsuit, Jannetti filed several notices of pendency with the County Clerk for the County of Suffolk ("Suffolk County"), defendant Judith Pascale ("Pascale"), who immediately recorded them. A notice of pendency does not create a property interest; it simply informs the public that the judgment demanded in a lawsuit "would affect the title to, or the possession, use or enjoyment of, real property." N.Y. C.P.L.R. § 6501. Defendants do not have the opportunity to challenge a notice of pendency before it is filed and recorded. Instead, after the notice is recorded, defendants may move the court to cancel it. *Id.* § 6514.

Plaintiffs in this action, who were defendants in the state action, moved to cancel Jannetti's notices of pendency, and were successful with respect to the first two, but not the third notice of pendency. After the state court upheld the third notice, plaintiffs initiated this action, arguing that the filing and immediate recording of Jannetti's multiple notices of pendency violated their due process, equal protection, and free speech rights. The particular harm alleged is that plaintiffs could not obtain a construction loan while their property was burdened by a notice of pendency.

For the reasons discussed below, the Court grants defendants' motions to dismiss. The Second Circuit considered and rejected a very similar challenge to the

constitutionality of Article 65 in *Diaz v. Paterson*, where it concluded that Article 65 "provides all the process that is due in respect of the claimed property interests at stake." 547 F.3d 88, 96 (2d Cir. 2008). Plaintiffs—who allege the same type of injury as the *Diaz* plaintiffs—have not materially distinguished their case, and accordingly, their due process claims fail, as a matter of law, under *Diaz*.

Plaintiffs' equal protection and free speech claims are also dismissed because the Court concludes, as a matter of law, that: (1) a cognizable equal protection claim cannot be asserted by plaintiffs based upon any alleged differences in the length of time it takes for various judges to resolve legal challenges brought under Article 65; and (2) a cognizable First Amendment claim cannot be asserted by plaintiffs based upon the theory that Article 65 requires plaintiffs to use the court system to challenge a notice of pendency, and thus somehow interferes with plaintiffs' free speech rights. These two purported theories of liability do not, and cannot, support a cognizable constitutional claim in this case as a matter of law.

I. BACKGROUND

The following facts are taken from the complaint. The Court assumes them to be true for the purpose of deciding this motion, and construes them in the light most favorable to plaintiffs, the non-moving parties.

Plaintiffs jointly own a home in Suffolk County, and were parties to a real estate contract with Jannetti involving the sale of the home to him. (Compl. ¶¶ 1, 14.) On December 9, 2010, Jannetti filed a summons and complaint seeking specific performance of the real estate contract, which would require plaintiffs to sell him their home. (*Id.* ¶¶ 14-15.) Jannetti also filed a notice of pendency in the office of Pascale, the Suffolk County Clerk, who immediately recorded it in Suffolk County's publicly available real property records (*id.* ¶ 15), as she was bound to due by Article 65. *See* N.Y. C.P.L.R. § 6511(c) ("Each county clerk with whom a notice of pendency is filed shall immediately record it.").

As is discussed below, plaintiffs received no prior notice of the filing or recording of the notice of pendency, and they object to the fact that Article 65 does not require such notice, which they argue is due to them because of the potential for abuse of the notice of pendency. The complaint alleges that "the recorded lis pendens[1] is a document that has a significant adverse impact on the property owners' private interests, such as a tainted credit rating, ability to procure even a small mortgage through a home equity loan . . . and an impaired ability to alienate the property." (Compl. ¶ 53.) Plaintiffs allege that Jannetti's notice of pendency harmed them by making it impossible for them to obtain a construction loan in order to make needed repairs to their home. (*Id.* ¶ 64.)

On April 7, 2011, the Suffolk County Supreme Court canceled Jannetti's notice of pendency in response to plaintiffs' motion and dismissed his claim for specific performance, but plaintiffs allege that Pascale did not remove the notice of pendency from Suffolk County's real property records. (*Id.* ¶ 18.) On May 16, 2011, Jannetti filed a second notice of pendency, which Pascale immediately recorded, again without notice to plaintiffs (*id.* ¶ 16), who contend in this lawsuit that Article 65 forbids successive notices of

---

[1]Notices of pendency are also known as "*lis pendens*." *See 5303 Realty Corp. v. O&Y Equity Corp.*, 64 N.Y.2d 313, 315 (1984).

2

pendency when the first one was canceled. *See* N.Y. C.P.L.R. § 6516(c). The Suffolk County Supreme Court canceled Jannetti's second notice of pendency as well, but plaintiffs allege that Pascale did not remove it from the real property records either. (Compl. ¶ 19.)

On July 25, 2012, the New York Appellate Division reinstated Jannetti's claim for specific performance and his original notice of pendency. (*See* Ex. 2 to Weiss First Decl.) For reasons that are not entirely clear, Jannetti responded to the Appellate Division's order by filing a third notice of pendency on August 3, 2012, which the Suffolk County Supreme Court held was valid on April 17, 2013. (*See* Ex. B to McGowan Decl.) It does not appear that plaintiffs ever appealed the April 17, 2013 order upholding Jannetti's third notice of pendency, though the Suffolk County Supreme Court dismissed the entire specific performance claim on February 5, 2014. (*See* Ex. 1 to Weiss First Decl.)

The complaint is not clear concerning whether, after the February 5, 2014 dismissal, the state litigation remains ongoing, but counsel for plaintiffs stated at oral argument in this case that Jannetti had appealed the dismissal of his state claim, and that the parties were awaiting oral argument in the Second Department. Plaintiffs filed their complaint in this action on December 9, 2013, in between the Suffolk County Supreme Court's order upholding Jannetti's third notice of pendency and its order dismissing his specific performance claim. Defendants moved to dismiss the complaint in this action in its entirety on February 14, 2014. On March 17, 2014, plaintiffs responded in opposition, and also moved to disqualify defendants' counsel.[2] Defendants responded in opposition to the disqualification motion, and in further support of their motion to dismiss, on April 7 and 21, 2014. Plaintiffs replied in further support of their disqualification motion on both April 16 and 29, 2014.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two important considerations for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their

---

[2] Plaintiffs' motion to disqualify defendants' counsel is mooted by the Court's dismissal of the complaint in its entirety. As discussed *infra*, the claims fail as a matter of law and, thus, the disqualification issue raised by plaintiffs' motion (relating to defendants' counsel being a potential witness) is irrelevant and moot.

3

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, [and] (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Nasso v. Bio Reference Labs.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (internal quotation marks and citation omitted). Both parties have relied on opinions and orders of the state courts in framing the complaint and their submissions on this motion, and, where noted, the Court has considered those opinions and orders.

III. DISCUSSION

Before reaching the merits, the Court notes that defendants raised several additional grounds for dismissal of plaintiffs' claims, including the *Rooker-Feldman* doctrine, collateral estoppel, Article 78, *Younger* abstention, and the absence of state action with respect to Jannetti. Defendants have not shown that *Younger* abstention should apply, and the Court need not decide the other grounds for dismissal raised by defendants because the Court agrees with defendants' contention that plaintiffs' claims, in any event, fail as a matter of law for the reasons discussed *infra*.[3] Similarly, although the Court agrees with Suffolk County that it is not a proper defendant because Pascale was exercising a state function, the Court need not consider whether the State of New York was a necessary party whom plaintiffs failed to join because the claims fail as a matter of law.[4]

---

[3] This Court may bypass *Rooker-Feldman* in order to reach the merits of a dispute. *See Edwards v. City of Jonesboro*, 645 F.3d 1014, 1017-18 (8th Cir. 2011) ("The courts of appeals disagree about whether a federal court may bypass *Rooker–Feldman*, a question of statutory jurisdiction, to reach an easier question of preclusion or the merits." (citing *Quadrozzi Concrete Corp. v. City of New York*, 149 F. App'x 17, 18 (2d Cir. 2005) for the proposition that courts may bypass *Rooker-Feldman*)). With respect to *Younger* abstention, because defendants have not shown that the constitutional claims have been or will be litigated in an "ongoing state proceeding," *Younger* abstention is inappropriate. *See Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995).

[4] There is no dispute that, as County Clerk, Pascale "serves both the State and local governments . . . . As a clerk of the courts, the County Clerk is a State officer for whom the State is responsible." *Nat'l Westminster Bank, USA v. State*, 76 N.Y.2d 507, 509 (1990). "The filing of a notice of pendency is part of the judicial process, and the Clerk acts as a State officer in that respect, although the filing may occur before any suit has been commenced." *Id.* Accordingly, Pascale is properly a defendant in the claims for injunctive relief in this lawsuit (although she would receive immunity from a claim for damages, *see Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. 2005)), and the Court need not consider the necessity of joining the State of New York. However, the Court dismisses all claims against Suffolk County for the independent reason that there is no plausible allegation that it played any role with respect to Pascale's state function. Plaintiffs cite no legal support for their argument that the allegations related to Suffolk County's funding of

4

A. *Diaz v. Paterson*

Turning to the merits of plaintiffs' claims, the Court notes that a similar challenge to the constitutionality of Article 65 has been made and rejected once before. In *Diaz*, the Second Circuit considered whether a notice of pendency implicates a "significant property interest" protected by the Due Process Clause, and if so, whether Article 65 provides sufficient due process. 547 F.3d at 95. The Court did not decide the former question because, in its view, the answer to the latter question was clear: Article 65 "provides all the process that is due in respect of the claimed property interests at stake." *Id.* at 96.

The holding in *Diaz* was based primarily on the Supreme Court's decision in *Connecticut v. Doehr*, 501 U.S. 1 (1991), which involved a challenge to Connecticut's prejudgment attachment statute. Although "[p]rejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government," *id.* at 10-11, the *Doehr* Court nonetheless applied the *Mathews* balancing test to determine whether Connecticut's system satisfied due process, because "[s]uch enactments are designed to enable one of the parties to 'make use of state procedures with the overt, significant assistance of state officials,' and they undoubtedly involve state action 'substantial enough to implicate the Due Process Clause.'" *Id.* at 11 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988)).

Following *Doehr*, the Second Circuit in *Diaz* assumed that *Mathews* balancing should apply to Article 65, but found "material distinctions" between Article 65 and the Connecticut statute at issue in *Doehr*. 547 F.3d at 97. For example, Article 65 imposes less of a burden on the property owner under the first step of *Mathews*. *Id.* Unlike attachment, a notice of pendency allows a property owner to continue "to inhabit and use the property, receive rental income from it, enjoy its privacy, and even alienate it." *Id.* at 98. Although the Court still considered Article 65 to impose a burden in *Diaz* because plaintiffs alleged difficulty in obtaining a construction loan (the same type of injury alleged by plaintiffs here), the Court noted that the burden weighed less in the overall balance than did the attachment remedy at issue in *Doehr*. *Id.*

The Second Circuit also found a material distinction between Article 65 and prejudgment attachment at the second step of *Mathews*, which "assesses the risk that a notice of pendency would be wrongfully filed under existing procedures, and the probable value of any additional statutory safeguards." *Id.* In *Doehr*, there was a substantial risk of error because plaintiffs

---

the Clerk's office provide a plausible basis for relief against Suffolk County in an action concerning the constitutionality of Article 65, a state statute. In other words, there is no allegation that any level of funding or staffing in the Clerk's office affected whether plaintiffs had a right to notice or a hearing before Jannetti's notices of pendency were recorded. At most, the complaint implies that inadequacies in the Clerk's office led Pascale's staff to "rubber stamp" notices of pendency by recording them right away (*see* Compl. ¶¶ 37-40), but the Clerk's office is required to do so by Article 65. *See* N.Y. C.P.L.R. § 6511(c) ("Each county clerk with whom a notice of pendency is filed shall immediately record it."). Thus, even construing plaintiffs' allegations in a light most favorable to her, the complaint simply alleges that the Clerk's office followed the law, regardless of how the office was funded or staffed by the County. Therefore, the complaint fails to state a plausible claim against the County on this independent ground.

5

could seek to attach property even in intentional tort cases "that had no connection to the property and did not 'readily lend [themselves] to accurate *ex parte* assessment[] of the merits.'" *Id.* (quoting *Doehr*, 501 U.S. at 17).

> By contrast, the risk of erroneous deprivation is minimal under the New York lis pendens procedure, which is available only to claimants asserting a defined interest in the property. . . . Defenses notwithstanding, the underlying claims (unlike tort claims) involve[] relatively uncomplicated matters that lend themselves to documentary proof[5]. . . . The risk of error [is] further reduced by Article 65's procedural safeguards. . . . As to notice, the statute requires service of a summons within 30 days after filing a lis pendens in order to preserve it, thus apprising the property owner of a claim against the property. *See* N.Y. C.P.L.R. 6512. As to opportunity to be heard, the statute provides for a hearing to challenge the lis pendens, and for cancellation of the lis pendens upon a showing that the plaintiff in the underlying lawsuit "has not commenced or prosecuted the action in good faith." *Id.* 6514(b) . . . Notice and hearing are afforded post-deprivation; but such procedural safeguards suffice where "the nature of the issues at stake minimizes the risk" of wrongful deprivation.

---

[5] The same is true here: Jannetti's suit below was an action for specific performance of a contract, which involved interpretation of that document. (*See* Ex. 1 to Weiss First Decl.)

*Id.* at 98-99 (quoting *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 609-10 (1974)).

Finally, the Second Circuit concluded that the third step of *Mathews*—which considers the interests of the claimant and the state—weighed in favor of the constitutionality of Article 65. "The *Doehr* Court discounted the interest of a claimant who had no pre-existing stake in the attached property and no asserted basis for fearing that the attached property might become unavailable. . . . [but] lis pendens in New York is available only to secure claims of existing interests in the realty at issue." *Id.* at 100. "Likewise, New York has a greater interest in the prejudgment remedy than Connecticut had in *Doehr*," because Article 65 protects a court's power over the property at issue in the litigation, which could be frustrated by a transfer or encumbrance if there were no notice of pendency. *Id.* Therefore, "[t]aken together, the interests of the claimant and the state in the availability of the lis pendens remedy are substantial, and weigh in favor of the constitutionality of the statute." *Id.*

B. Application of *Diaz* to Plaintiffs' Claims

As is clear from the above discussion, the Second Circuit gave the constitutionality of Article 65 thorough consideration in *Diaz*, and this Court must follow that holding. Plaintiffs note that *Diaz* is an "as-applied" holding, *id.* at 101, and seek to distinguish their situation on two grounds: first, that this case involves *successive* notices of pendency, which are prohibited by Article 65, *see* N.Y. C.P.L.R. § 6516(c); and second, that the underlying action here involved an anticipated breach of contract.

Plaintiffs have not cited any cases to support either distinction, and the state court

6

rejected this same argument when plaintiffs attempted to cancel Jannetti's third notice of pendency as non-compliant with Article 65. (*See* Ex. B to McGowan Decl.). In doing so, the court noted both that Jannetti's filing of a successive notice was proper where his cause of action was restored by the Appellate Division, and that notices of pendency are appropriate in anticipatory breach cases requesting specific performance, such as Jannetti's. (*See id.* (citing *N. Triphammer Dev. Corp. v. Ithaca Assocs.*, 704 F. Supp. 422, 428 (S.D.N.Y. 1989) ("It is a well-established in New York law that the filing of the *lis pendens* is a proper use of a provisional remedy when filed in conjunction with an action for specific performance." (internal quotation marks and citation omitted))).) [6]

The Court agrees that Jannetti's use of Article 65 was proper under New York law, and plaintiffs have shown no reason why his lawful use of the procedure approved in *Diaz* would require a different result under the Due Process Clause. Plaintiffs—who claim the exact same type of injury as the *Diaz* plaintiffs—received "the fundamental requirement of due process," which is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Eldridge*, 424 U.S. at 333 (internal quotation marks and citation omitted). Although Jannetti's suit was ultimately dismissed, that holding does not itself indicate that plaintiffs suffered any constitutional deprivation. They still received the opportunity to be heard on the notice of pendency. Plaintiffs contend that the ultimate dismissal of the case indicates that the notice of pendency was wrongly filed, but New York law provides a remedy (as the Second Circuit noted in *Diaz*) if plaintiffs believe that Jannetti abused Article 65: an action for malicious prosecution or abuse of process. *See* 547 F.3d at 91 n.1 ("A property owner who seeks damages for misuse of a notice of pendency may also bring an action for malicious prosecution or abuse of process." (citing 13 Weinstein, *New York Civil Practice: CPLR* ¶ 6514.11, at 65-71)). Plaintiffs have not shown why the New York state-law remedies are constitutionally inadequate in this case.

The Court also notes that the public interest would not be served by a constitutional distinction between plaintiffs' case and *Diaz*. "[E]xperience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." *Eldridge*, 424 U.S. at 347. While "[f]inancial cost alone is not a controlling weight," *id.*, plaintiffs acknowledge (both explicitly and implicitly) that the relief they seek would require additional time and personnel if a County Clerk is required to conduct a hearing or review before recording a notice of pendency. (*See* Compl. ¶¶ 38-39, 62-63, 86-87.) Where, as noted above, the risk of error is minimal in part because of existing procedural safeguards and the nature of the notice of pendency itself—it does not actually deprive property owners of their property—"at some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that

---

[6] *See also Deutsch v. Grunwald*, 63 A.D.3d 872, 874, 882 N.Y.S.2d 167 (N.Y. App. Div. 2009) (allowing second notice of pendency where "the circumstances of the second filing do not evince an attempt to abuse the privilege of filing a notice of pendency"); *Bonded Concrete Inc. v. Johnson*, 280 A.D.2d 758, 760, 720 N.Y.S.2d 227 (N.Y. App. Div. 2001) ("Where, however, there has been a significant change in circumstances such as those present in this case, we hold that the successive filing of a notice of pendency is permissible.").

the action is just, may be outweighed." *Eldridge*, 424 U.S. at 348. "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands,'" *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)), and the Supreme Court has "emphasized that in determining what process is due, account must be taken of the *length* and *finality* of the deprivation, *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (internal quotation marks and citation omitted, emphasis in original). Plaintiffs have not shown that their situation requires pre-deprivation safeguards, when the same injury—a deprivation of at most moderate length and finality—did not warrant such safeguards in *Diaz*. A pre-recording hearing would also be inconsistent with the purpose of a notice of pendency, as it would require a litigant seeking to inform the public about litigation to litigate even more in order to do so.

To the extent that plaintiffs confine their request to a "notice of presentment" provision which would inform property owners before a notice of pendency is recorded, it is unclear how, if at all, mere notice would lessen the risk of error or serve the public interest. "[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process," which a notice of presentment alone, absent additional procedures and administrative costs, does not address. Moreover, procedural due process rules are "applied to the generality of cases, not the rare exceptions." *Id.* at 344. Plaintiffs' argument is premised on their contention that anticipatory breach cases involving successive notices of pendency are fundamentally different from what was at issue in *Diaz*, but they have not shown how.[7] In fact, both cases resulted in the same type of injury (the inability to obtain a construction loan), and both sets of plaintiffs were afforded the same procedures to redress that injury. Accordingly, following *Diaz*, the Court dismisses plaintiffs' due process claims as a matter of law.

C. Remaining Constitutional Claims

The complaint asserts four causes of action, but the first, third, and fourth are all plainly duplicative of each other: they challenge the constitutionality of Article 65's procedures under a due process theory,[8]

---

[7] Plaintiffs appear to argue that, because a party alleging anticipatory breach must show readiness and willingness to perform his obligations under the contract, that party could be required to make a preliminary version of that showing prior to the recording of a notice of pendency. Apart from the fact that plaintiffs have not articulated why this one type of case should be singled out for distinct constitutional treatment, this case illustrates why such a rule is unworkable as a pre-deprivation due process requirement. Jannetti's anticipatory breach claim was dismissed because the trial court was dissatisfied with the evidentiary quality of the bank statements he submitted in an attempt to prove his financial ability to close on plaintiffs' home. Thus, the rule that plaintiffs propose entails a level of legal analysis that judges typically perform. Requiring county clerks to analyze financial documents and apply the rules of evidence to them simply to record a notice of pendency simply has no constitutional justification.

[8] To the extent that the fourth cause of action (or any other cause of action) attempts to assert a non-constitutional claim under Article 65 itself or under some other provision of New York law, the Court, in its discretion under 28 U.S.C. § 1367(c)(3), "'decline[s] to exercise supplemental jurisdiction'" over plaintiffs' state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks

8

and thus fail to state claims for the reasons discussed above. The second cause of action appears to assert distinct constitutional violations under equal protection and free speech theories, but plaintiffs have neither argued those theories in their papers nor cited any legal authority relevant to them. The equal protection theory is that the Article 65 system "inherently treats litigants differently in terms of timing, depending upon how soon the assigned Supreme Court Justice is able to analyze the facts and resolve discovery disputes." (Compl. ¶ 75.) Plaintiffs have failed to identify any legal authority to support their equal protection claim, and that is because it has no merit. In particular, there is no cognizable equal protection claim that can be premised on the alleged fact that different judges take different amounts of time to decide challenges brought under Article 65. Accordingly, that equal protection claim is dismissed as a matter of law.

Plaintiffs' free speech theory is similarly without merit. Plaintiffs appear to contend that Article 65 "compels a property owner to be forced to speak in a public judicial forum simply to preserve property rights and reputational interests." (Compl. ¶ 77.) Once again, plaintiffs have cited no case in support of this theory, and the Court is aware of no authority supporting the proposition that the Government compels speech simply because its routine, statutorily-authorized action (recording a notice of pendency) attracts a plaintiff's challenge in litigation. *Cf. Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 63 (2006) (noting that compelled-speech cases involve a speaker who is forced to accommodate another's message); *accord Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 737 (1996) ("We recognize that the First Amendment, the terms of which apply to governmental action, ordinarily does not itself throw into constitutional doubt the decisions of private citizens to permit, or to restrict, speech—and this is so *ordinarily* even where those decisions take place within the framework of a regulatory regime."). In short, the fact that a statute provides for (or even requires) a judicial proceeding be initiated in order for a plaintiff to challenge a particular action does not, as a matter of law, raise a cognizable free speech claim on the theory that plaintiff is being compelled to utilize the court system. Accordingly, plaintiffs' free-speech claim is also dismissed as a matter of law.

IV. CONCLUSION

The Court grants defendants' motion to dismiss the complaint in its entirety. Plaintiffs have not materially distinguished their case from *Diaz v. Paterson*, in which the plaintiffs alleged the same type of injury as plaintiffs here and the Second Circuit concluded that Article 65 "provides all the process that is due in respect of the claimed property interests at stake." 547 F.3d 88, 96 (2d Cir. 2008). A different constitutional result is not warranted by the fact that this case involves successive notices of pendency and a claim for anticipatory

---

subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Liz Claiborne, Inc*., No. 99–CV–3608, 2002 WL 1561126, at *4 (S.D.N.Y. Jul. 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

breach. Plaintiffs' related equal protection and free speech claims are also dismissed because the legal theories that plaintiffs attempt to assert are not cognizable as a matter of law.[9] To the extent that the fourth cause of action (or any other cause of action) attempts to assert an independent, non-constitutional claim under Article 65 itself (or under some other provision of New York law), the Court declines to exercise supplemental jurisdiction over any such state claims given that the federal claims cannot survive a motion to dismiss. Finally, plaintiffs' motions to disqualify defendants' counsel are mooted by the dismissal of their claims.[10]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 16, 2014
Central Islip, NY

* * *

Plaintiffs are represented by Patricia Weiss, Sag Harbor Shopping Cove, 78 Main Street, Suite 14, P.O. Box 751, Sag Harbor, NY 11963. Suffolk County is represented by Jacqueline Caputi, Elaine Barraga, and Leonard Kapsalis, Suffolk County Department of Law, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788. David Jannetti is represented by Thomas J. McGowan, Meltzer, Lippe, Goldstein & Breitstone LLP, 190 Willis Avenue, Mineola, NY 11501.

---

[9] The Court has considered whether to give leave to amend, but declines in its discretion to do so, because the claims fail as a matter of law, and thus any attempt to amend them would be futile. *See Cuoco v. Moritsuqu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

[10] Disqualification under the witness-advocate rule is triggered only when the attorney is likely to be a witness on a significant issue of fact in the same proceeding in which he acts as an advocate. This action will not reach proceedings involving factual testimony because it has been dismissed, as a matter of law, under Federal Rule of Civil Procedure 12(b)(6). *See Ross v. Blitzer*, No. 09 Civ. 8666(HB), 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009) ("[W]here there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature.").